[Crim. No. 6204. Second Dist., Div. One. Sept. 22, 1958.]

THE PEOPLE, Appellant, v. RICHARD ROBINSON SPICER, Respondent.

---

*Assigned by Chairman of Judicial Council.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Lewis Watnick and Robert Lederman, Deputy District Attorneys, for Appellant.

No appearance for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendant was accused of a violation of section 11500 of the Health and Safety Code, in that he did, on or about November 26, 1957, have in his possession flowering tops and leaves of Indian Hemp (*cannabis sativa*), commonly referred to as marijuana.

At the time fixed for his plea, defendant made a motion under section 995 of the Penal Code on the ground that defendant had been committed without reasonable or probable cause. The motion was granted and the information was ordered set aside. From such order the People prosecute this appeal.

As to the factual background surrounding this prosecution, the record reveals testimony before the committing magistrate that about 12:30 p. m., on the afternoon of November 26, 1957, two police officers were seated in a police automobile marked black and white. Both officers were in uniform. The police vehicle was standing near the curb at Fifth Street and Stanford Avenue. J. W. Ramey, one of the officers, testified that he first observed defendant talking to another man in front of a liquor store at Fifth Street and Towne Avenue. Defendant and his friend started walking east on Fifth Street toward the officers. As defendant approached the police vehicle, the officers asked him to "step over to the car a minute." Defendant ignored the request of the officers and "kept right on walking." Officer Ramey's partner, Officer Drake, got out of the police automobile and "hollered to the defendant to stop, that we would like to talk to him." Defendant arrived at the corner of Fifth Street and Stanford Avenue, and as he was near the corner building, he started to turn left on Stanford Avenue. At that time, defendant looked in the direction of the officers. As defendant passed Officer Ramey, the latter observed defendant's right hand which was "cupped, the fingers drawn into the palm and the thumb laid alongside of it." Defendant was holding his hand, "Alongside—right alongside of his body. He wasn't swinging it at all." As he arrived at the corner, defendant started to turn his head in the direction of Officer Ramey. The latter observed something "drop" near defendant's feet, a "yellowish brown," that looked to the officer like a homemade cigarette. When the officer first saw it, as it was dropping to the ground, it was approximately a foot or maybe two feet from the ground, and it was maybe a foot behind the defendant. When he, the defendant, walked around the corner the cigarette was drop-

ping. There was no one else in the immediate area of the defendant. The officer observed the cigarette strike the ground. The sidewalk was clean and as the officers saw the cigarette fall on the ground, Officer Ramey got out of the vehicle and went over to the cigarette and picked it up.

The officer identified People's Exhibit 1 for identification as the cigarette that he found on the ground, and which he had heretofore described. After picking it up, the officer ran to the corner and observed defendant running north on Stanford Avenue. Officer Drake pursued defendant on foot. They arrived at the alley at the rear of the Torch Club, which is on the corner of Fifth Street and Stanford Avenue, where they turned left into the alley, going west. Officer Ramey ran back to the police vehicle and drove west on Fifth Street to Towne, north on Towne to the alley, and then east in the alley. Officer Ramey observed the defendant run behind a building into an empty lot, and observed the former's partner running after defendant. The witness drove to that location, parked the vehicle, got out, and his partner had already placed the defendant under arrest.

Officer Ramey had often before seen defendant and saw him only two days before the happenings with which we are here concerned. About a week previous the officer encountered defendant with a lady and had stopped them and talked to them on that occasion.

Jack Olin Carter testified that he was a Los Angeles city police officer assigned to the Scientific Investigation Division as a chemist. His qualifications as an expert forensic chemist were stipulated to. The brown-wrapped cigarette testified to by Officer Ramey was found to contain a green leafy material which the witness examined microscopically and tested chemically. As a result of such examination the witness testified that in his opinion the substance was marijuana.

The sole question presented on this appeal is whether the foregoing testimony established reasonable and probable cause to hold defendant to answer to the superior court.

Appellant contends that the corpus delicti of the crime of illegal possession of marijuana and defendant's connection with the crime were established at the preliminary examination. We find ourselves in accord with appellant's claim.

A cursory examination of the aforesaid evidentiary features present in the instant prosecution brings it within the sphere of cases holding that while mere presence at the

scene of the crime standing alone is insufficient to justify a finding of guilt, nevertheless, guilty knowledge and intent to violate the law may be shown by the facts and circumstances of the case, including the conduct of the accused (*People* v. *Gibson*, 64 Cal.App.2d 537, 539 [149 P.2d 25]; *People* v. *Foster*, 115 Cal.App.2d 866, 868 [253 P.2d 50]).

*People* v. *Belli*, 127 Cal.App. 269 [15 P.2d 809] involved a prosecution for the illegal possession of morphine, wherein the facts were that shortly before his arrest, while walking along the street, defendant dropped a small white package on the sidewalk; that it was immediately picked up by another person walking in the opposite direction, and that, upon a search of the latter person, a small white package similar to the one defendant had thrown on the sidewalk was found, which contained an illegal quantity of morphine. The court held that the evidence was sufficient to establish defendant's possession, and that proof of possession at the very time of arrest was not essential. (See also *People* v. *McDaniel*, 154 Cal.App.2d 475, 481 [316 P.2d 660]; *People* v. *Newman*, 127 Cal.App.2d 430, 435 [273 P.2d 917].)

In several cases in which the facts indicated that defendants threw away narcotics at or about the time of arrest, the evidence was held sufficient to establish defendants' possession of the narcotics. (*People* v. *Terrazas*, 42 Cal.App.2d 281 [108 P.2d 680]; *People* v. *Rodrigues*, 25 Cal.App.2d 393 [77 P.2d 503]; *People* v. *Herbert*, 59 Cal.App. 158, 159 [210 P. 276].) Also, where heroin capsules were found by officers on the seat of defendant's automobile, which defendant had just abandoned, it was held that the inference was justified that defendant had possession of the capsules while in the vehicle. (*People* v. *Shafer*, 101 Cal.App.2d 54, 58 [224 P.2d 778].)

█ If we consider that in the instant case the officer observed the marijuana cigarette drop near defendant's feet; that the officer first observed this cigarette when it was a foot or two from the ground, and a foot behind the defendant; that there was no one else in the immediate area of the defendant; and that the sidewalk was clean at the particular location, then it appears that it is quite reasonable to infer that defendant was in possession of the marijuana cigarette before it was dropped. This conclusion is fortified by the fact that defendant ignored the officers after they requested him to stop for a minute; that defendant's right hand was "cupped" with the fingers drawn into the palm and the thumb laid alongside of it, and defendant was holding his

hand alongside of his body and not swinging it at all; and that defendant started to run from the officers, and it was necessary to pursue him in order to make the arrest. Also, the committing magistrate was entitled to take into consideration the flight of respondent as indicating a consciousness of guilt on his part (Pen. Code, § 1127c).

It is also noteworthy that at the preliminary examination respondent made no objection to the introduction into evidence of the marijuana cigarette. He thereby waived his right to claim that such evidence was improperly received because it had been illegally obtained contrary to the rule announced in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], and the committing magistrate properly considered it in determining whether there was sufficient cause to believe that the accused had committed a public offense (*People* v. *Pruitt*, 155 Cal.App.2d 585, 595 [318 P.2d 552]; *Robison* v. *Superior Court*, 49 Cal.2d 186, 187 [316 P.2d 1]; *People* v. *McFarren*, 155 Cal.App.2d 383, 384 [317 P.2d 998]).

Since the officers observed respondent drop what appeared to be a "homemade" cigarette and then attempt to flee, there was no search or seizure in this case such as is contemplated by law. As was said in *People* v. *West*, 144 Cal. App.2d 214, 219, 220 [300 P.2d 729]: "A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.' A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender. (79 C.J.S., 775-776.)"

That to observe that which is open and patent is not a search was the holding in *People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Jaurequi*, 142 Cal.App.2d 555, 561 [298 P.2d 896]. Analogous to the situation with which we are here concerned is the case of *People* v. *Edwards*, 142 Cal. App.2d 419, 421 [298 P.2d 664], wherein it is said: ". . . Furthermore, here the appellant voluntarily dropped the bindle of heroin to the floor. Hence there is no question of any illegal search involved. After appellant's attempted flight the officer was entitled to pick up the bindle from the floor as part of his police investigation." (See also *People* v. *Sterling*, 154 Cal.App.2d 401, 405-406 [316 P.2d 405].)

■ Although, in the case at bar, there was no search or seizure involved, we are persuaded that under the facts above narrated and the actions and conduct of respondent, the officers were entitled to reasonably believe that respondent was probably engaged in a violation of the law, and that it was their duty to make an investigation. The facts herein speak for themselves *(People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52] ; *People* v. *Edwards, supra,* p. 421; *People* v. *Dore,* 146 Cal.App.2d 541, 544 [304 P.2d 103] ; *People* v. *Garnett,* 148 Cal.App.2d 280, 283 [306 P.2d 571] ).

■ The applicable rule governing the superior court in the determination of motions under section 995 of the Penal Code is set forth in *People* v. *Bradley,* 152 Cal.App.2d 527, 535 [314 P.2d 108], as follows:

"The rule defining the function of the trial court when confronted with a motion to set aside an information under the section just cited, was thus enunciated in *People* v. *Jackson,* 146 Cal.App.2d 553, 556 [303 P.2d 767] : '. . . It is the record before the magistrate that is decisive. In arriving at his decision the magistrate may weigh the evidence, may resolve conflicts, and may give or withhold credence to witnesses. In testing the sufficiency of the showing made before him on motion to quash the superior court cannot do these things. (Citing cases.) ' ■ In *People* v. *Flanders,* 140 Cal.App.2d 765, 768 [296 P.2d 13], it is stated: '. . . On a motion to set aside an information, the court may not substitute its judgment as to the weight of the evidence for that of the magistrate conducting the preliminary examination. On such motion the court will not inquire into the sufficiency of the evidence if there is some evidence in support of the information.' " (See also *People* v. *Jablon,* 153 Cal.App.2d 456, 459 [314 P.2d 824].)

Guided by the rule just stated, and under the facts and circumstances of the case now engaging our attention, it is manifest that the evidence was sufficient to justify the order holding respondent to answer to the superior court.

The order setting aside the information is reversed.

Fourt, J., and Lillie, J., concurred.